**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dave Emery Lemmon | No. CV-11-1808-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff, Dave Emery Lemmon, which challenges the Social Security Administration's decision to deny benefits. (Doc. 18). For the reasons set forth below, the Court affirms the decision.

**BACKGROUND**

Plaintiff, who was born in July 1966, alleges that he has been disabled since August 13, 2007. (Doc. 11-6 at 110).[1] Prior to the alleged onset of his disability, Plaintiff had relevant work experience as a truck driver. (R. at 60).

On May 15, 2008, Plaintiff filed claims for disability, alleging that his back disorders, diabetes, and anxiety prevented him from working. (R. at 68–69). His claim

---

[1] Documents 11-1 through 11-11, the transcript of the administrative record, are hereinafter cited as "R."

was denied on July 30, 2008. (R. at 70). He filed a written request for a hearing on March 2, 2009. (R. at 84). A hearing was held on March 15, 2010, at which Plaintiff and a vocational expert testified. (R. at 32).

On April 1, 2010, the ALJ denied Plaintiff's claim in a written decision. (R. at 17). In his decision, the ALJ undertook the five step sequential evaluation for determining disability.[2] (R. at 17–26). First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 19). At step two, the ALJ determined that Plaintiff's lumbar degenerative disc disease and chronic obstructive pulmonary disease ("COPD") were both severe within the meaning of 20 CFR § 404.1520(c). (R. at 19). The ALJ further found that although Plaintiff was diagnosed with diabetes and anxiety disorder, neither caused more than minimal limitation in Plaintiff's

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if he proves: (1) that he is not presently engaged in a substantial gainful activity[,] (2) that his disability is severe, and (3) that his impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, he is not able to perform any work that he has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

abilities, so neither qualified as severe under 20 C.F.R. § 404.1520(c). (R. at 19–20). At step three, the ALJ determined that none of Plaintiff's impairments, either alone or in combination, met the severity requirement to qualify as a listed impairment in 20 C.F.R § 404.1520(d). (R. at 21).

Proceeding to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC").[3] In making this determination, the ALJ credited the medical source statement of Dr. Keith Cunningham, M.D. (R. at 235), and to a lesser extent the opinion of Dr. Ken Young. (R. at 315). The ALJ gave little or no weight to the opinion of treating physician Peter Young, M.D. (R. at 262), and the opinion of treating physician Alfredo Lim, M.D. (R. at 451). Although Dr. Cunningham concluded that Plaintiff could lift or carry 50 pounds occasionally and 20 pounds frequently, the ALJ provided "the benefit of the doubt" to Plaintiff and concluded that he had the residual functioning capacity at the light exertional level as defined in 20 C.F.R. § 404.1567(b). (R. at 23). The ALJ further determined that Plaintiff was unable to perform his past work. (R. at 23).

Having determined that Plaintiff had severe impairments that prohibited him from performing his past work but left him with the residual functional capacity to perform light work, the ALJ proceeded to step five. The ALJ found that Plaintiff had additional limitations that prohibited him from performing the full range of light work, and therefore considered the testimony of the vocational expert. The vocational expert testified at the

---

[3] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

hearing that a person with an RFC to perform light work limited by Plaintiff's other restrictions could work as a cashier, assembly worker, and quality control inspector, and cited the figures at which such jobs exist in the national economy. (R. at 61–62). The ALJ thereby found that Plaintiff was not disabled. (R. at 25).

Plaintiff requested that the Appeals Council review the decision on April 24, 2010 (R. at 12), and the Appeals Council denied review on July 18, 2001. (R. at 1). On September 15, 2011, Plaintiff filed suit in this Court.[4] (Doc. 1). The matter is now fully briefed before the Court. (Docs. 18, 24, 32).

**DISCUSSION**

**I.     Legal Standard**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). Substantial evidence is relevant evidence, considering the entire record, which a reasonable person might accept as adequate to support a conclusion. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). A court is required to review the ALJ's decision based on the reasoning

---

[4] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 4 -

and factual findings offered by the ALJ, and cannot attempt to intuit what the adjudicator may have been thinking. *Bray v. Comm'r of the Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943)).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

"Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a treating doctor's opinion is contradicted by the opinion of another doctor, an ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record" before rejecting it. *Id.* An AJL "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228.

When considering whether to admit a claimant's subjective symptom testimony,

- 5 -

an ALJ must engage in a two-step analysis. In step one, "the claimant must produce objective medical evidence of underlying impairment, and must show that the impairment, or a combination of impairments, could reasonably be expected to produce pain or other symptoms." *Batson*, 359 F.3d at 1196 (internal quotations omitted). Once the claimant meets this burden, so long as the evidence "shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with specific findings stating clear and convincing reasons for doing so." *Id.* (internal quotation omitted).

The Ninth Circuit has recently held that "when the Appeals Court considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

**II.   Analysis**

Plaintiff challenges both the ALJ's decision at step two that his anxiety is not severe[5] and the AJL's decision at step four that he had an RFC at the light exertional level. These issues will be addressed in turn.

**A.   Step Two: Anxiety**

The ALJ evaluated whether Plaintiff's anxiety is severe based upon the four so-

---

[5] Plaintiff does not challenge the finding that his diabetes, which is treated with medication, is not severe.

called "Paragraph B" criteria, activities of daily living, social functioning, concentration, and decompensation. 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ relied upon Plaintiff's testimony regarding his activities of daily living, his social interactions, and his ability to follow instructions to conclude that those factors did not support a finding that Plaintiff's anxiety was severe, and noted that there was no evidence to suggest Plaintiff had ever suffered episodes of decompression. (R. at 20–21). In making these findings, the ALJ discounted the opinion of Nurse Practitioner Marie Walker, APRN, BC, who had rated Plaintiff's limitations as moderately severe in some areas and severe in others. (R. at 449–50).

In discounting the opinion of Nurse Walker, the ALJ noted that Dr. Marcel Eerd, Psy.D., examined Plaintiff and diagnosed him with "adjustment reaction with depressive and anxious symptoms," but found that he could manage simple to more complex instructions and information. (R. at 19). The ALJ found that some of the difficulties diagnosed by Dr. Eerd should improve with his current medical treatment, citing to the record, which notes that Plaintiff "[r]eports improved symptoms and less depressed on the Cymbalta." (R. at 402). Since Nurse Practitioners are classified as "other sources," 20 C.F.R. § 404.1513(d), an ALJ may discount their testimony if the ALJ "gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations omitted). Plaintiff's own testimony, the evaluation by Dr. Eerd, and the evidence in the record that Plaintiff's medications were improving his condition qualify as germane reasons for discounting NP Walker's evaluation; the ALJ's finding

that Plaintiff's anxiety does not qualify as severe is therefore supported by substantial evidence in the record.

### B.    Step Four: Residual Functional Capacity

The ALJ found that although Plaintiff's lumbar degenerative disc disease and his chronic obstructive pulmonary disease were severe, Plaintiff retained an RFC to perform light work with certain limitations. (R. at 24). In arriving at this conclusion, the ALJ relied on the opinion of Dr. Keith Cunningham, M.D., and Dr. Ken Young, M.D., both of whom examined Plaintiff. (R. at 23). The ALJ assigned more weight to Dr. Cunningham and Dr. Ken Young's opinions than he did to Plaintiff's former treating physician, Dr. Peter Young, M.D., and to his treating physician, Dr. Alfredo Lim, M.D. (R. at 23). The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his impairments were "not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R. at 24). These issues will be discussed in turn.

#### 1.    Medial Testimony

An ALJ must provide "clear and convincing reasons" to reject a medically acceptable treating physician's uncontroverted medical opinion. *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). When such an opinion is contradicted, however, an ALJ need only offer "specific and legitimate reasons that are supported by substantial evidence in the record" to reject it. *Id.* Dr. Peter Young and Dr. Lim both treated Plaintiff, and both claimed that Plaintiff could not work even at the

- 8 -

sedentary level. (R. at 23). The ALJ found that the opinion of each was entitled to little or no weight. The ALJ found that Dr. Peter Young's opinion contradicted his own notes, and that his notes were contradicted by the record, including an MRI performed on Plaintiff, noting that "Dr. P. Young's notes refer to the claimant's herniated discs, which is not consistent with the objective evidence (July 2008 MRI showed no evidence of disc herniation)." (R. at 23).[6] The ALJ found that Dr. Lim's finding that Plaintiff was unable to perform work at even the sedentary level was "not supported by the treatment records or other objective findings." (R. at 24).[7]

The treatment records and objective findings to which the ALJ was referring included the reports of two examining physicians, Dr. Keith Cunningham and Dr. Ken Young. Dr. Cunningham found that Plaintiff could get on and off of the examination table, could squat, and had a normal range of motion in his cervical spine. (R. at 236). Dr. Cunningham found that although Plaintiff exhibited high pain behavior, he could stand on his heels and toes, walk to and from the exam room independently, and flex and raise

---

[6] Plaintiff asks this court to reinterpret the ALJ's reading of the MRI by comparing language in the report generated after the MRI ("disc material *approaching* the undersurface of both L5 nerve roots") with language from a medical dictionary defining a herniated disc ("gelatinous material of the ruptured disc *protrudes* into the vertebral canal"). (Doc. 18 at 14–15). The Court does not pretend to medical expertise sufficient to resolve this dispute; the proper moment to make such an argument was before the ALJ. The Court notes that the MRI report describes the damage to Plaintiff's spine as "very slight," "diffuse," involving "minimal irregularity," and "mild." (R. at 233).

[7] The ALJ also relied on the fact that Dr. Lim diagnosed Plaintiff with "failed back syndrome," although Plaintiff has never had back surgery to discount Dr. Lim's credibility. (R. at 24). As with the MRI, the Court will not conduct an independent investigation of medical terminology to determine whether back surgery is a prerequisite to "failed back syndrome." The Court does note that when the ALJ, at the hearing, stated that before being diagnosed with "failed back syndrome," a person has to "at least have surgery before they can be assessed," Plaintiff's lawyer did not dispute that assertion but instead replied "I'm not sure why he chose that wording." (R. at 65–66).

his legs. (R. at 236). Dr. Cunningham noted that Plaintiff had chronic back pain, but that the exam was "otherwise unremarkable." (R. at 236). Dr. Ken Young conducted an exam in November of 2008, and noted that Plaintiff "gave inadequate effort," and that attempts to conduct further testing were "unsuccessful." (R. at 315).

The ALJ properly weighed the reports of examining and treating physicians. Dr. Cunningham, an examining physician, provided a report that contradicted Dr. Peter Young and Dr. Lim's conclusions. As such, the ALJ needed only "specific and legitimate reasons" based on substantial evidence in the record to credit it. *Carmickle*, 533 F.3d at 1164. Dr. Cunningham's detailed examination qualifies as substantial evidence in the record, and the ALJ did not err by assigning significant weight to his report given "his medical specialty and extensive examination." (R. at 23; *see* 20 C.F.R. § 404.1527(d)(1)–(6)).

### 2. Pain Testimony

The ALJ also rejected subjective pain testimony delivered by Plaintiff at the hearing, and discounted the opinions of Dr. Peter Young and Dr. Lim to the extent that they were based on Plaintiff's subjective statements to them rather than on their examination findings. (R. at 21–24). In conducting the two-step process required when evaluating subjective pain testimony, the ALJ found that although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" his statements "concerning the intensity, persistence, and limiting effects of these symptoms" were not credible. (R. at 24). *See Lingenfelter v. Astrue*, 504 F.3d 1028,

1035–36 (9th Cir. 2007).

If the medically determinable impairments could reasonably be expected to cause the alleged symptoms "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036. "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ found, relying on Dr. Ken Young's report, that Plaintiff "gave inadequate effort on the pulmonary function test." (R. at 23).[8] It noted that the record showed that Plaintiff declined treatment for his lung impairment because it required quitting smoking, and that Plaintiff was "very adamant to continue smoking at this time." (R. at 22). He quit physical therapy after one month. (R. at 22). The ALJ also relied on Plaintiff's testimony regarding his activities of daily living. (R. at 24). Finally, the ALJ noted that "claimant testified that he receives income from a trust fund, which suggests that he has little

---

[8] Although such a finding may qualify as "evidence of malingering" sufficient to lower the standard necessary to find a claimant not credible, the ALJ did not cite the evidence of malingering as a reason for applying, "so the clear and convincing standard applies." *Chaudhry v. Astrue*, ___ F.3d ___, 2012 WL 3241364, at *11 n.9 (Aug. 10, 2012).

incentive to work." (R. at 24). The ALJ's finding that Plaintiff is not credible was based on the *Tomasetti* factors, and is "clearly, specifically, and convincingly supported by the record." *Chaudhry*, 2012 WL 3241364, at *10.[9] "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn,* 495 F.3d at 638 (internal citation omitted).

### C.   New Evidence Introduced at the Appellate Level

Plaintiff submitted new evidence to the Appeals Council, which "the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes*, 682 F.3d at 1163. The evidence in question consists of a second MRI that reports Plaintiff has "a mild diffuse bulging disc" between each of three of Plaintiff's vertebrae (R. at 474), and a CT scan of Plaintiff's chest which revealed "emphysematous changes with significant bullous disease within the right upper lobe." (R. at 479). The physician found that the findings "could be consistent with an old chronic lumbar radiculopathy." (R. at 475). The Appeals Council considered the evidence, and found that the "information does not provide a basis for changing the Administrative Law Judge's decision." (R. at 2). The Court has considered this evidence and agrees with the Appeals Council that it does not negate the fact that there was substantial evidence in the record to support the ALJ's decision.

---

[9] Plaintiff would have this Court find that the ALJ's decision was in error because the ALJ's sentence concluding the credibility determination is "unhelpful" and "boilerplate." (Doc. 18 at 27). The sentence in question follows four pages in which the ALJ analyzed the record and the reports of various medical examiners.

**CONCLUSION**

The ALJ properly considered the record, and his conclusions were neither unsupported by substantial evidence in that record nor based on legal error. Given the reliance on substantial evidence, even if "the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198.

**IT IS THEREFORE ORDERED** that the decision of the ALJ is **AFFIRMED**.

Dated this 31st day of August, 2012.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge